IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| NVR, Inc. a Virginia corporation, d/b/a/ Ryan Homes, | ) ) ) | CA No. 6:10-2158-TMC |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER** |
| West Georgia Road Venture, LLC; Arnold Seppala; Rodney E. Gray; James T. Miller; Douglas M. Wilson; Gray Engineering Consultants, Inc.; and RCS Grading, Inc., | ) ) ) ) ) ) ) | |
| Defendant. | ) ) | |

In this case, the plaintiff NVR, Inc., d/b/a/ Ryan Homes (NVR) is pursuing various causes of action against a number of defendants arising out of a development project. Before the court are motions for summary judgment filed by defendant Douglas M. Wilson (Wilson) (Dkt. No. 138) and defendants Rodney T. Gray (Gray) and James T. Miller (Miller) (Dkt. No. 145).[1] The court held a hearing on these and other motions on May 9, 2012. Considering the written submissions and the arguments presented at the hearing, the court denies both motions for summary judgment.

**I.**

This case arises out of a multi-family residential development called Oak Park Townhome Community (Oak Park) in Simpsonville, South Carolina. Defendants Wilson, Gray, and Miller (collectively, the individual defendants) are the three members of West Georgia Road

---

[1] Defendants RCS Grading (RCS), Bunnell-Lammons Engineering, Inc. (Bunnell-Lammons), and Arnold Seppala (Seppala) are no long parties to this case. Defendant Gray Engineering, Inc. (Gray Engineering) remains a party but is not involved in these motions for summary judgment.

Venture, LLC (WGRV).[2] WGRV served as the developer. According to the contract, WGRV was to prepare the lots, through subcontractors[3], and NVR was to purchase the lots and construct the townhomes.[4]

In November 2009, a portion of a retaining wall and fence at the back of Oak Park collapsed. After allegedly attempting to contact WGRV to remediate the problem, NVR determined that the soil compaction was not properly performed and remediated the problem.[5] NVR allegedly spent $640,000 in remediation.

NVR subsequently filed the present action. (Dkt. No. 82.) Pertinent to the motions before the court here, NVR alleges fraud and negligent misrepresentation on behalf the individual defendants. Additionally, NVR asserts an action to pierce the corporate veil to subject the individual defendants to personal liability.

In their motions for summary judgment (Dkt Nos. 138, 145), Wilson, Miller, and Gray argue that NVR has not produced more than a mere scintilla of evidence supporting either the fraud or negligent misrepresentation claims. Additionally, the individual defendants submit that (a) South Carolina limited liability corporation (LLC) law shields members of an LLC from personal liability and that (b), even if the LLC code permits individual liability, NRV has not produced any evidence suggesting WGRV or the individual defendants failed to observe

---

[2] WGRV is a defendant in this case but has not appeared and is in default. (Dkt. No. 90.)

[3] RCS grading performed grading work for the project.

[4] The contract at issue was signed by NVR and a person purporting to represent WGRV on June 16, 2004. The court notes that WGRV was not organized as an LLC until approximately one month later in July 2004. Additionally, the individual who signed the contract on behalf of WGRV was not and is not a member of the WGRV.

[5] NVR performed compaction testing; re-performed grading and compaction work, installed piers, moved homeowners off-premises, and built a new retaining wall. Defendants argue that at least some of the remediation, specifically the building of the new retaining wall, was unnecessary.

corporate formalities such that the corporate veil should be pierced.[6]

## II.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Rule 56, Fed. R. Civ. P. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party, of course, bears the initial burden in showing the court that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323. Following this initial showing, the nonmoving party must produce "specific facts showing that there is a genuine issue for trial." *Id.* at 322. To do so, the nonmoving party must present more than a mere scintilla of evidence that a genuine issue of material fact exists. *Anderson*, 477 U.S. at 252. The court construes all facts and reasonable inferences arising therefrom in a light most favorable to the nonmoving party. *EEOC v. Central Wholesalers, Inc.*, 573 F. 3d 167, 174 (4th Cir. 2009).

## III.

### A.

The court will first address the individual defendants' contention that South Carolina law does not permit personal liability for members of an LLC. The court holds that South Carolina law does permit an individual member of an LLC to be personally liable for torts he committed.

South Carolina law does primarily limit liability for corporate officers or directors from

---

[6] The court notes that the parties on both sides appear to have conflated the issue of individual liability stemming from one's own torts and individual liability stemming from piercing the corporate veil. The court notes that these are two separate issues. NVR alleges that the individual defendants are liable both for their own tortious conduct and for WGRV's liabilities through a piercing the corporate veil analysis.

liability arising out of official actions of the corporation. *Hunt v. Rabon*, 275 S.C. 475, 272 S.E.2d 643 (1980); *see also Steinke v. Beach Bungee, Inc.*, 105 F.3d 192, 195 (4th Cir. 1997) ("In South Carolina, there is a strong presumption that an officer or director of a corporation is not, merely as a result of his standing as such, personally liable for the torts' of the corporation.").

Likewise, The South Carolina Uniform Limited Liability Company Act provides limited liability:

> (a) [T]he debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company. A member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager.
>
> (b) The failure of a limited liability company to observe the usual company formalities or requirements relating to the exercise of its company powers or management of its business is not a ground for imposing personal liability on the members or managers for liabilities of the company.

S.C. Code Ann. § 33-44-303 (2006).[7]

However, in the corporate context, the general rule does not protect individuals from liability for torts in which they participated or directed. *See Rowe v. Hyatt*, 321 S.C. 366, 369, 468 S.E.2d 649, 650 (1996) ("To incur liability, the office, director, or controlling person must ordinarily be shown to have some way participated in or directed the tortuous act."); *Plantation A.D., LLC v. Gerald Builders of Conway, Inc.*, 386 S.C. 198, 209, 687 S.E.2d 714, 720 (Ct. App. 2009) (stating summary judgment inappropriate when evidence existed suggesting president of defendant corporation participated in tortuous conduct); *BPS, Inc. v. Worthy*, 362 S.C. 319, 328, 608 S.E.2d 155, 160–61 (Ct. App. 2005) (stating that the "corporate veil does not protect [a corporate officer] from liability for his own actions").

---

[7] In section 33-44-303(c), the statue provides that members may be liable as individuals if the articles of organization provide as such, but no party has raised that issue here.

Recently, the South Carolina Supreme Court extended this exclusion to the LLC context. *16 Jade Street, LLC v. R Design Construction Co., et al.*, Op. No. 27107 (S.C. Sup. Ct. filed April 4, 2012) (Shearouse Adv. Sh. No. 12 at 28). For the first time, the Supreme Court considered individual member liability in light of section 33-44-303: "This case presents the novel question of whether a member of a limited liability company can be held personally liable for torts committed while acting in furtherance of the company's business." *Id*. The Supreme Court noted that a majority of states have determined that "a member is always liable for his own torts and cannot rely on his status as a member of an LLC as a shield." *Id*. at 34 (listing cases from various states establishing that principle). Ultimately, the Supreme Court held that the South Carolina General Assembly did not intend to abrogate the common law right to suit one's own tortfeasor.[8] The Supreme Court concluded "that section 33-44-303(a) . . . does not insulate the tortfeasor himself for personal liability for his actions." *Id*. at 39. While the LLC statute does limit a member's exposure to the LLC's liabilities, *16 Jade Street* stands for the proposition that the LLC statute does not shield an individual member from liability for his own torts. In light of the Supreme Court's holding in *16 Jade Street*, the court rejects the position proffered by the individual defendants and denies summary judgment on this issue.[9]

**B.**

The court will now turn to the individual defendants' motion as to the piercing the corporate veil/alter ego claim. As to this claim, the court denies the motion for summary

---

[8] The Supreme Court noted that its holding was also informed by the individual liability rule in the corporate context, as discussed above. *Id*. at 38.

[9] At oral argument and in their briefs, the individual defendants argued that the holding in *16 Jade Street* was limited to negligence, the tort committed in that case. However, the court can discern no such limitation from the text of the opinion. Additionally, the individual defendants have asked the court to not consider *16 Jade Street*, as the defendant in that case has filed a petition for rehearing. The court declines that request. Unless and until the Supreme Court rehears and issues a substitute opinion in *16 Jade Street*, the current opinion is the law in South Carolina.

judgment.

Under South Carolina law, piercing the corporate veil should be undertaken with caution. *See Drury Dev. Corp. v. Foundation Ins. Co.*, 380 S.C. 97, 101, 668 S.E.2d 798, 800 (2008) ("[T]he doctrine of piercing the corporate veil is not to be applied without substantial reflection.") (citations omitted). In analyzing a piercing the corporate veil question, the courts apply a two prong test. The first prong involves evaluating eight factors: (1) whether the corporation was undercapitalized; (2) whether the members failed to observe corporate formalities; (3) whether the corporation failed to pay dividends; (4) whether the corporation was insolvent; (5) whether the dominant stockholder siphoned off funds; (6) whether the officers and/or directors were nonfunctioning; (7) whether the corporation kept adequate records; and (8) whether the corporation was merely a façade for the dominant stockholders. *Sturkie v. Sifly*, 280 S.C. 453, 457, 313 S.E.2d 316, 318 (Ct. App. 1984) (citing *DeWitt Truck Brokers, Inc. v W. Ray Flemming Fruit Co.,* 540 F.2d 681, 686–87 (4th Cir. 1976)). The second prong requires evaluating whether a fundamental unfairness would result if the corporate entity were recognized. *Sturkie,* 280 S.C. at 457–58, 313 S.E.2d at 318. The second prong—whether a fundamental unfairness would result—represents the heart of a piercing the corporate veil analysis. *Id*., 313 S.E.2d at 318.

Here, NVR has produced little evidence relating to any of the eight factors in the first prong. WGRV is an LLC properly organized under the laws of South Carolina and registered with the Secretary of State. The individual defendants have produced WGRV's articles of organization, a detailed operating agreement, tax returns for several years, a valid federal employer ID number, and evidence of a clear distribution of the profits and losses of the LLC. As noted by the individual defendants, NRV has produced scant evidence suggesting that

WGRV failed to observe corporate formalities.

However, in general, equitable principles govern a piercing the corporate veil analysis. As noted above, the heart of a piercing the corporate veil analysis is whether fraud or fundamental injustice will occur if the corporate entity is recognized. "'When the motion of legal entity is used to protect fraud, justify wrong, or defeat public policy, then law will regard the corporation as an association of persons.'" *Drury Dev. Corp.*, 380 S.C. at 101, 668 S.E.2d 798, 800 (quoting *Sturkie*, 280 S.C. at 457, 313 S.E.2d at 318). Here, as will be discussed in more detail below in Subsection C, NVR has produced evidence, which, if true, supports the notion that the individual defendants conspired to perpetuate a fraud. The court is justifiably concerned that fundamental injustice may occur if the corporate form is recognized. *See Drury Dev. Corp.*, 280 S.C. at 102, 668 S.E.2d at 800–01 ("The essence of the fairness test is simply that an individual businessman cannot be allowed to hide from the normal consequences of carefree entrepreneuring by doing so through a corporate shell.") (citation omitted).[10] In light of this evidence and in consideration of the standard at the summary judgment stage of the litigation, the court denies the individual defendants' motions for summary judgment on this issue.

## C.

Finally, the court will address the issues of fraud and negligent misrepresentation. On these issues, the court denies the individual defendants' motions for summary judgment.

To establish liability in a fraud action, the plaintiff must prove the following elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the

---

[10] The court notes that the three individual defendants are the only officers, directors, or employees of WGRV. Thus, by conscious decision, they are solely responsible for allowing WGRV to go into default. To foreclose a piercing of the corporate veil at this stage and to allow the individual defendants to hide behind the corporate shell when they alone are responsible for its actions or lack thereof could lead to an unjust result or fundamental unfairness.

hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*Turner v. Milliman,* 392 S.C. 116, 122, 708 S.E.2d 766, 769 (2011) (citing *M.B. Kahn Constr. Co. v. S.C. Nat'l Bank of Charleston*, 275 S.C. 381, 384, 271 S.E.2d 414, 415 (1980)). To establish liability for negligent misrepresentation, the plaintiff must show that

> (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the representation; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation.

*Turner*, 392 S.C. at 123, 708 S.E.2d at 769 (citing *Quail Hill, LLC v. County of Richland,* 387 S.C. 223, 240, 692 S.E.2d 499, 508 (2010)).

The individual defendants argue that NVR has not put forth any evidence in support of these causes of action. However, as NVR strongly alleges, Gray's deposition contains evidence in support of the notion that the three individual defendants knew that industry standards required compaction testing and collectively decided to forego compaction testing to save money. (Dkt. No. 174-2.)[11] Further, it is undisputed that none of the three individuals informed NVR that compaction testing was not performed.[12] Taking this evidence in a light most favorable to NVR as the court is required to do at the summary judgment stage, *see Central Wholesalers*, 573 F.3d at 174, the court holds that this evidence has created a genuine issue of material fact.

---

[11] Wilson alleges he was not party to this conversation and had no reason to be. However, this allegation merely perpetuates the question of fact, which is inappropriate for this court to determine on a motion for summary judgment.

[12] At the hearing and in supplemental briefings, the individual defendants argued that NVR's fraud and negligent misrepresentation claims were premised upon a mere broken promise—the failure to perform compaction testing, though the contract required the testing. While these torts cannot be premised upon "unfulfilled promises or statements as to future events," *Davis v. Upton*, 250 S.C. 288, 291, 157 S.E.2d 567, 568 (1967), entering into an agreement with no intention of keeping that agreement constitutes an actionable tort, *Turner*, 392 S.C. at 123, 708 S.E.2d at 770 (citations omitted). Further, "[a]n inference of a lack of intent to perform a promise can only be made when nonobservance of a promise is coupled with other evidence." *Id*. at 124, 708 S.E.2d at 770 (citations omitted). The court is of the opinion that NVR is alleging more than a mere broken promise or contract term.

## IV.

In accordance with the opinion set forth above, the court hereby **DENIES** Wilson's motion for summary judgment (Dkt. No. 138) and Gray and Miller's motion for summary judgment (Dkt. No. 145).

  **IT IS SO ORDERED.**

                    s/Timothy M. Cain
                    Timothy M. Cain
                    United States District Judge

Greenville, South Carolina
May 25, 2012